**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| James Tettenhorst, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>Lindt & Sprüngli (USA), Inc.,<br><br>   Defendant | Case No.<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Tettenhorst (hereinafter "Plaintiff"), individually on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.      This action seeks to remedy the deceptive and misleading business practices of Lindt & Sprüngli (USA) Inc. (hereinafter "Defendant" or "Lindt") with respect to the marketing and sale of Defendant's Lindt dark chocolate products throughout the United States. Defendant's products include, without limitation, the following: (1) Lindt Excellence Dark Chocolate 70% Cocoa and (2) Lindt Excellence Dark Chocolate 85% Cocoa (hereinafter the "Products").

2.      Defendant fails to disclose on the Products' packaging and labeling the material fact that the Products contain lead and cadmium. Lead is a dangerous and harmful chemical when consumed, especially by pregnant women and children. Scientists agree that there is no level of lead that is safe. According to the Mayo Clinic, "[l]ead poisoning occurs when lead builds up in the body, often over month or years. Even small amounts of lead can cause serious

health problems. Children younger than 6 years are especially vulnerable to lead poisoning, which can severely affect mental and physical development. At very high levels, lead poisoning can be fatal."[1]

3.      Cadmium is also a dangerous and harmful chemical when consumed. Cadmium is used in many products unfit for human consumption, including batteries, pigments, metal coatings, and plastics, and is found in cigarette smoke. Exposure to even low levels of cadmium in air, food, water, and tobacco smoke over time may build up cadmium in the kidneys and cause kidney disease and fragile bones. Furthermore, cadmium is considered a cancer-causing agent.[2]

4.      In December 2022, Consumer Reports Magazine published a report titled "Lead and Cadmium Could Be in Your Dark Chocolate," revealing that independent testing discovered that many popular dark chocolate bars, including the Products, contain high levels of cadmium and lead.[3] Using California's Maximum Allowable Dose Level (MADLs) for lead (0.5 Micrograms) and cadmium (4.1mcg), Consumer Reports Magazine found that Lindt's Excellence Dark Chocolate 70% Chocolate contained 116% of the MADL of cadmium and Lindt's Excellence Dark Chocolate 85% Cocoa contained 166% of the MADL of lead, well in excess of the applicable MADLs.[4] California's MADLs (otherwise known as Proposition 65) is a regulatory standard for chemicals causing reproductive toxicity.[5] The Products' and their MADLs are depicted below:

---

[1] https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717.
[2] https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html.
[3] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.
[4] *Id.*
[5] https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum.

 

5.      Defendant's advertising and marketing campaign for the Products, including the packaging and labeling of the Products, is false, deceptive, and misleading because it does not disclose the high levels of lead and cadmium in the Products. The presence of high levels of lead and cadmium in food products is obviously material to reasonable consumers because these chemicals, even in small dosages, pose serious health risks. Additionally, the lead and cadmium levels in the Products could not be known by consumers before purchasing them and may not be determined without extensive and expensive scientific testing. Accordingly, consumers rely on Defendant to be truthful regarding the ingredients, including the existence of lead and cadmium, in the Products.

6.      Nothing on the packaging or labeling, as depicted below, discloses the presence of lead or cadmium in the Products.[6]

---

[6] https://www.lindtusa.com/70-percent-cocoa-dark-chocolate-excellence-bar-392825; https://www.lindtusa.com/85-percent-cocoa-dark-chocolate-excellence-bar-392851.

 

 

7.    Instead, as seen above, the packaging states that the Products are "[e]xpertly crafted with the finest ingredients" and have "excellence."

8.    Furthermore, Lindt claims that its "premium chocolate products are safe, as well as delightful." Lindt specifically claims regarding its "commitment to food safety" that:

"Our standards uphold the integrity of our raw and packaging materials and ingredients, as well as warehousing, transportation, and manufacturing processes. They help us manage key quality and food safety risks across our value chain, from farmer to final consumer, while staying ahead of regulatory requirements. We aim to achieve full and continuous compliance with quality and food safety standards."[7]

9.      Lindt asserts that its "International Operations team oversees product quality and product safety, while quality assurance teams at each of [its] subsidiaries provide oversight at their local production facilities."[8]

10.     Lindt claims that its production facilities have certified management systems in place for food safety and follow strict requirements "which meet or exceed legal regulations and standards… ."[9]

11.     Upon information and belief, Defendant, however, must have known of the existence of lead and cadmium in the Products. Defendant sources the ingredients and manufactures the Products and has exclusive knowledge of the quality control testing on the Products and the ingredients contained therein.

12.     Plaintiff and those similarly situated ("Class Members," as defined further below, including Subclass Members) would never have purchased the Products had they known that the Products contained high levels of lead and cadmium.

13.     Plaintiff and Class Members paid a premium for the Products based upon Defendant's marketing and advertising campaign, particularly insofar as they understood based on Defendant's misrepresentations and omissions that they were purchasing products without lead and

---

[7] https://www.lindt-spruengli.com/amfile/file/download/id/6775/file/Lindt-Spruengli-Sustainability-Report-2021.pdf.
[8] *Id*.
[9] *Id*.

cadmium when, in reality the Products contained high levels of lead and cadmium. Given that Plaintiff and Class Members overpaid for the Products based on Defendant's misrepresentations and omissions, Plaintiff and Class Members suffered an injury in the amount of the premium paid, i.e. the difference in value between the products represented – dark chocolate without lead and cadmium – and the Products delivered – dark chocolate with lead and cadmium.

14.    Defendant's conduct violated and continues to violate, *inter alia*, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statutes ("ILCS") 505/1 et. seq., and Nevada Trade Regulation and Practices Act, Nevada Revised Statutes ("NRS") § 598.0903 et seq. Defendant also breached and continues to breach its implied warranty of merchantability regarding the Products. In addition, Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations periods (the "Class Period").

## PARTIES

### Plaintiff

15.    Plaintiff James Tettenhorst is an individual consumer who resided in Illinois until September 2020 and has since resided in Nevada. Plaintiff purchased and consumed the Products multiple times during the Class Period (defined below) in Illinois and in Nevada. Plaintiff also fed the Products to his two daughters. Prior to purchasing the Products, Plaintiff read the Products' packaging and labeling.

16.    Plaintiff would not have purchased the Products had he known that Defendant

misrepresented that the Products contained only the dark chocolate ingredients and were safe for consumption. Plaintiff reasonable believes that products that advertise as dark chocolate do not contain lead and cadmium.

17.     Had Defendant disclosed that the Products contained lead and cadmium, Plaintiff would not have been willing to pay the same amount for the Products and/or would not have been willing to purchase the Products.  Plaintiff purchased and paid more for the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less than the Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

18.     Defendant, Lindt & Sprüngli (USA) Inc., is a New York corporation with its principal  place of business in Statham, New Hampshire. Defendant is authorized to do business in  Illinois and Nevada. Defendant sells chocolate products,  including the Products, purchased by Plaintiff and Class Members, which are available at retail stores and online throughout Illinois, Nevada, and the rest of the United States.

19.     Defendant controls the entire production process of the Product, from cocoa bean to finished product.[10]

20.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.

21.     Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

22.     Defendant has more than 50 retail stores across the country.[11]

---

[10] https://www.farming-program.com/en/bean-to-bar.
[11] https://www.lindtusa.com/store-events.

23.    Defendant has grown to produce more than 41,000 tons per year and plans to continue to expand its facilities to meet growing demand in the US for its products.[12]

24.    Defendant claims to hold the position of No. 1 in the US premium chocolate segment.[13]

## JURISDICTION AND VENUE

25.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332(d).  This is a class action brought on behalf of more than 100 class members; the claims of the Plaintiff and the Classes exceed $5 million; and there is minimal diversity between the Class Members and Defendant because there are members of the Classes who are citizens of states of which Defendant is not a citizen.

26.    This Court has personal jurisdiction over Defendant because Defendant is headquartered and therefore "at home" in New Hampshire, and moreover, Defendant transacts business in New Hampshire, contracts to supply goods within New Hampshire, and supplies goods within New Hampshire. Moreover, the actions of Defendant that give rise to the claims in this action, including the dissemination of false and misleading marketing and advertising materials such as the Products' packaging and labeling, took place and emanated from New Hampshire.

27.    Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in the District, and a substantial part of the events, misrepresentations, and omissions giving rise to the Classes' claims occurred in this district.

---

[12] https://jobs.lindtusa.com/about-lindt-usa.
[13] *Id.*

## **FACTUAL BACKGROUND**

28.     Consumers have become increasingly concerned about the effects of unhealthy chemicals in food products that they and their family members consume. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

29.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains lead, cadmium, or other unsafe and unhealthy substances, especially at the point of sale. Therefore, consumers must and do rely on Defendant to truthfully and honestly report what their Products contain on their packaging or labeling. Indeed, testing for these chemicals requires expensive and destructive scientific testing. Given the relatively low price of the Products, no reasonable consumer would engage in such testing before purchasing the Products.

30.     However, public reports and articles recently revealed that Defendant's Products contain unsafe levels of lead and cadmium. Indeed, these levels of lead and cadmium exceed the MADLs for these chemicals, posing serious health risks. Despite these risks, Defendant failed to include any disclosures regarding lead and cadmium levels on its Products.

31.     Upon information and belief, Defendant knew and could not have been unaware of the lead and cadmium in the Products. Defendant has a responsibility to implement controls to significantly minimize  or prevent exposure to chemical hazards in the Products.

32.     In 2017, Defendant was put on notice of the high presence of lead and cadmium in one of the Products by a Proposition 65 Violation Notice.[14] In the years since, Defendant has failed to remedy the issue or warn consumers that the Products would expose consumers to lead and cadmium when

---

[14] https://oag.ca.gov/system/files/prop65/notices/2017-02379.pdf

consumed.

33.    Defendant manufactures and sources the ingredients contained within the Products.

34.    Researchers found that the heavy metals were "typically found naturally in the outer shell of the cocoa bean, not in the bean itself."[15] The levels of heavy metals were measured soon after the beans were picked and removed from pods, showing low levels of cadmium and lead, but, as the beans dried, the levels increased.[16] Consumer Reports and its researches concluded that "[d]uring that time, lead-filled dust and dirt accumulated on the beans."[17]

35.    Upon information and belief, Defendant tests the Products for quality control purposes, including the levels of toxic chemicals such as cadmium and lead contained therein. Additionally, Defendant receives Certificates of Analysis, and other certifications, from the suppliers of the ingredients used to create the Products. These documents will also disclose the levels of chemicals, such as cadmium and lead, contained in each constituent ingredient. These documents and its own testing alerted Defendant to the present of harmful chemicals, such as lead and cadmium, in the Products. Accordingly, Defendant had exclusive knowledge of the lead and cadmium levels in the Products, and Plaintiff and the Class could not reasonably be expected to have known about this risk.

36.    Defendant represents that it controls "the making of its chocolate from the selection of ingredients through production to distribution and sale" using "internal and external quality systems [and] an extensive network of specialists" to insure its "products meet the highest standards."[18]Defendant maintains that "all raw materials are rested in [Defendant's] in-hours

---

[15] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[16] Id.
[17] Id.
[18] https://www.lindt-spruengli.com/amfile/file/download/id/6775/file/Lindt-Spruengli-Sustainability-Report-

laboratories against the strictest specifications and quality standards before and after purchase."[19]

37.    Defendant claims that the safety of its products are "part of [its] brand identity and a core component of [its] business model… ."[20] Defendant claims to have "worked with [its] subsidiaries to assess increasingly onerous regulations in order to make any necessary adjustments to [its] standards."[21] "When ingredients it uses are deemed a critical health risk by new scientific findings," Defendant claims it will "work to quickly remove them from recipes."[22] Defendant further promises that it is committed to "responsible marketing communications that . . . help consumers make informed choices about their buying and consumption habits[,]" including "nutritional transparency… ."[23]

38.    Consumers reasonably rely on the marketing and information on Defendant's packaging and labeling in making purchasing decisions. By marketing the Products as containing only dark chocolate ingredients, and not disclosing the presence of cadmium and lead, Defendant misleads reasonable consumers.

39.    Despite Defendant's knowledge of lead and cadmium in the Products, Defendant failed to provide any warning on the packaging or labeling (or anywhere else) that the Products contain lead and cadmium.

40.    Conversely, the packaging of the Products asserts that the Products are "[e]xpertly crafted with the finest ingredients" and have "Excellence."

41.    Defendant's concealment was material because people are concerned with what is in the food that they are ingesting. In addition, parents and caregivers are concerned about what

---

2021.pdf
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*.
[23] *Id*.

they are feeding to the children in their care.  Consumers such as Plaintiff and the Class  Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the   food packaging they buy. Defendant knows that if it had not misrepresented or omitted material facts regarding the presence of lead and cadmium in the Products, and that the Products were not safe or healthy for consumption, then Plaintiff  and the Class would not have paid a premium for the Products (or purchased them at all).

42.    Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

43.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or purchase them at all.

44.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the presence of lead and cadmium in the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

45.    The conduct giving rise to Plaintiff's claims – Defendant's deceptive campaign to mislead consumers about the presence of lead and cadmium in the Products, emanated from the State of New Hampshire. New Hampshire has a significant interest in regulating, punishing, and preventing such wrongful conduct occurring within the State.

46.     Defendant's headquarters were established in Stratham, New Hampshire in 1989 and have remained there since.[24]

47.     The New Hampshire headquarters include Defendant's corporate offices.[25]

48.     Employees involved in the marketing of the Products, including Bethany Bray, Director of Marketing, work out of the New Hampshire headquarters.[26]

49.     Defendant's New Hampshire headquarters also have a R&D and Quality Assurance area, Sensory Lab, two climate-controlled warehouses, and a 500,000 square-foot production facility where cocoa beans are transformed into chocolate.[27]

50.     In 2019, Defendant launched a production expansion project to double the manufacturing capacity at the Stratham campus and establish the largest Lindt production facility in North America.[28]

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and a National Class consisting of:

All consumers who purchased the Products anywhere in the United States during the applicable statute of limitations period.

52.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and an Illinois Subclass consisting of:

All consumers who purchased the Products in the state of Illinois at any time during the applicable statute of limitations period.

53.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23 on

---

[24] https://jobs.lindtusa.com/about-lindt-usa.
[25] *Id.*
[26] https://www.linkedin.com/in/bethany-bray-2a70294.
[27] https://jobs.lindtusa.com/about-lindt-usa; https://www.linkedin.com/company/lindt-&-sprungli-usa?original_referer=https%3A%2F%2Fwww.google.com%2F.
[28] https://jobs.lindtusa.com/about-lindt-usa.

behalf of himself and a Nevada Subclass consisting of:

> All consumers who purchased the Products in the state of Nevada at any time during the applicable statute of limitations period.

54.     Plaintiff reserves the right to amend the definition of the National Class, the Illinois Subclass, and/or the Nevada Subclass.

55.     This action is properly maintainable as a class action.

56.     The Class, the Illinois Subclass, and the Nevada Subclass shall be referred to collectively throughout the Complaint as the Classes.

57.     Excluded from the Classes are government entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58.     The Classes are properly brought and this action should be maintained as a class action under Rule 23(a) and/or the applicable state consumer protection law, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

59.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Classes who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

60.     <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. The predominant questions of law and fact common to the Classes include, but are not limited to:

      a.     Do the Products contain lead and cadmium?

  b. Whether the amount of lead and cadmium in the Products is material to a reasonable consumer?

  c. Did Defendant fail to disclose material facts concerning the Products?

  d. Did Defendant misrepresent the ingredients of the Products?

  e. Was Defendant's conduct unfair and/or deceptive?

  f. Has Defendant breached the implied warranty of merchantability relating to the Products?

  g. Was Defendant unjustly enriched as a result of the conduct alleged herein?

  h. Are the members of the Classes entitled to damages?

  i. What is the proper measure of damages?

61. <u>Typicality</u>: Plaintiff is a member the National Class, the Illinois Subclass, and the Nevada Subclass. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Classes was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products and suffered the same type of economic injury. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

62. <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, he has a strong interest in vindicating his rights and the rights of the Classes, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

63. <u>Predominance</u>: Pursuant to Fed. R. Civ. P. 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes. The common issues predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

64.　　Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

65.　　Accordingly, the Classes are properly brought, and this action should be maintained as a class action under Rule 23(b)(3) and because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq.**
**(On Behalf of the Illinois Subclass)**

66.　　Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.　　Plaintiff brings this claim against Defendant on behalf of himself and the Illinois Subclass.

68.　　At all relevant times, Defendant was engaged in trade or commerce within the State of Illinois, including the trade or commerce of selling, or causing to be sold, the Products.

69.　　Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, declares that "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby

declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

70.     Defendant has engaged in "unlawful" deceptive acts and practices in the describing, labeling, marketing, promoting, and selling of the Products.

71.     Defendant's packaging and labeling of the Products is deceptive as it omits the high levels of lead and cadmium in the Products.

72.     Defendant's packaging and labeling is additionally deceptive as it misrepresents that the Products are made with the "finest ingredients" and have "excellence", inconsistent with the high levels of lead and cadmium in the Products.

73.     Defendant had exclusive knowledge of the lead and cadmium levels in the Products.

74.     Defendant intended Plaintiff and all Class Members to rely on the misrepresentations and omissions regarding the level and cadmium levels in the Products.

75.     Defendant's deception occurred in the course of the in-store and online sale of the Products to the consumers.

76.     Defendant's improper consumer-oriented conduct, including Defendant's misrepresentations and omissions regarding the lead and cadmium levels in the Products, is objectively deceptive in a material way in that it, *inter alia*, induced Plaintiff and all Class Members to purchase and pay a premium for the Products when they otherwise would not have paid such a premium or purchased the Products at all. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77.     Defendant's misrepresentations and omissions were material because consumers are concerned with the safety of food that they purchase and the ingredients therein.

78.     Defendant's conduct, as detailed herein, violated 815 ILCS 505/2, and as such,

Plaintiff and all Class Members seek monetary damages against Defendant.

79.     As a direct and proximate result of Defendant's violations of 815 ILCS 505/2, Plaintiff and all Class Members have been injured inasmuch as they paid a premium for Products that, contrary to Defendant's representations and omissions, contain lead and cadmium. Accordingly, Plaintiff and all Class Members received less than what they bargained and/or paid for.

80.     815 ILCS 505/10a(a) provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."

81.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and all Class Members are entitled to compensatory and punitive damages and an award of attorneys' fees and costs pursuant to 815 ILCS 505/10a(c).

## COUNT II

### VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT, NRS § 41.600 and NRS § 598.0903 et seq.
### (On Behalf of the Nevada Subclass)

82.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiff brings this claim against Defendant on behalf of himself and the Nevada Subclass.

84.     At all relevant times, Defendant was engaged in trade or commerce within the State of Nevada, including the trade or commerce of selling, or causing to be sold, the Products.

85.     NRS § 41.600 provides that "[a]n action may be brought by any person who is a victim of consumer fraud" and defines "consumer fraud" as, *inter alia*, "[a] deceptive trade practice

as defined in NRS 598.0915 to 598.0925, inclusive."

86.    Under Nevada Deceptive Trade Practices Act, NRS § 598.0915, a person engages in a "deceptive trade practice" if, in the course of his business, he, *inter alia*, "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale" or "[k]nowingly makes any other false representation in a transaction."

87.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation NRS § 598.0915, and as such, Plaintiff and all Class Members seek monetary damages.

88.    Defendant knowingly made false representations as to the true contents of the Products by failing to disclose the presence of lead and cadmium in the Products.

89.    Defendant made additional false representations on the Products' packaging that the Products are made with the "finest ingredients" and have "excellence", inconsistent with the presence of high levels of lead and cadmium in the Products.

90.    Defendant misleadingly, inaccurately, and deceptively advertises and markets the Products to consumers. By misrepresenting the true contents of the Products, Defendant's marketing and labeling have misled, and continue to mislead, reasonable consumers such as Plaintiff and the Nevada Subclass.

91.    Defendant had exclusive knowledge of the lead and cadmium levels in the Products.

92.    Defendant's misrepresentations and omissions were material because consumers are concerned with the safety of food that they purchase and the ingredients therein.

93.    Defendant's improper consumer-oriented conduct, including Defendant's misrepresentation and omissions regarding the lead and cadmium levels in the Products, is

misleading in a material way in that it, *inter alia*, induced Plaintiff and the Nevada Subclass Members to purchase and pay a premium for the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

94.    Plaintiff and the Nevada Subclass Members have been injured inasmuch as they paid a premium for Products that, contrary to Defendant's representations and omissions, contain lead and cadmium. Accordingly, Plaintiff and the Nevada Subclass Members received less than what they bargained and/or paid for.

95.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of NRS § 598.0915 and  Plaintiff and the Nevada Subclass Members have been damaged thereby.

96.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Nevada Subclass Members are entitled to monetary, statutory damages and attorneys' fees and costs pursuant to NRS § 41.600.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Classes)

97.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.    Plaintiff brings this claim against Defendant on behalf of himself and the Classes.

99.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, and/or selling of the Products.

100.    Each of the Products is considered a "good" under the relevant laws.

101.    UCC section 2-314 provides that for goods to be merchantable must: "(a)

pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promise or affirmations of fact made on the container or label if any."

102.    Defendant breached the implied warranty of merchantability because the Products had lead and cadmium.  Food products are not expected to have lead and cadmium insofar as lead and cadmium make food products unfit for human consumption.

103.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Product.  Defendant was put on constructive notice of its breach through media reports, as alleged herein, and upon information and belief through its own product testing and records.

104.    Plaintiff and each of the members of the Classes were injured because the Product contained lead and cadmium.

105.    As a direct and proximate result of Defendant's beach of the implied warranty of merchantability, Plaintiff and Class Members were damaged in the amount of price they paid for the Products, in an amount to be proven at trial.

**COUNT IV**

**UNJUST ENFIRCHMENT**
**(On Behalf of the Classes)**

106.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.    Plaintiff brings this claim against Defendant on behalf of himself and the Classes.

108.    Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

109.    Defendant's conduct violated, *inter alia*, state law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

110.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

111.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

112.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

113.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Classes, prays for judgment as follows:

(a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and applicable state consumer protection laws on behalf of the proposed

Classes described herein; and (ii) appointing Plaintiff to serve as representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

(b) Awarding monetary damages and, to the extent applicable, multiple damages;

(c) Awarding statutory damages pursuant to 815 ILSC 505/10a;

(d) Awarding statutory damages pursuant to NRS § 41.600;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members its costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting injunctive relief

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: March 16, 2023


*/s/Roger B. Phillips*
Roger Phillips
PHILLIPS LAW OFFICE
104 Pleasant Street
Concord NH 03301
Telephone: (603) 225-2767
Fax: (603) 226-3581
roger@phillipslawoffice.com

Edward F. Haber
Michelle H. Blauner
Ian J. McLoughlin
Patrick J. Vallely
Nicole E. Dill
SHAPIRO HABER & URMY LLP
One Boston Place, Suite 2600
Boston, Massachusetts 02108
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
mblauner@shulaw.com
imcloughlin@shulaw.com
pvallely@shulaw.com
ndill@shulaw.com

Jeffrey Gavenman
Jeremy Schulman
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
Telephone: (240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com