UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

:

**IN RE LINDT & SPRÜNGLI (USA), INC.,**          :
**DARK CHOCOLATE LITIGATION**

:

:     **MEMORANDUM DECISION AND**
        **ORDER**
:
        23-CV-1186 (AMD) (JAM)
:

:

:

----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiffs bring this putative class action against Lindt & Sprüngli (USA), Inc.

("Lindt"), alleging that Lindt deceptively marketed their dark chocolate bars as "expertly crafted

with the finest ingredients" and "safe, as well as delightful," when the bars in fact contained

significant amounts of lead.  The plaintiffs — who come from Alabama, California, Florida,

Illinois, Nevada and New York — allege violations of their states' consumer protection laws.

Before the Court is Lindt's motion to dismiss the complaint under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  For the reasons explained below, the motion is denied.

## BACKGROUND

The following facts are drawn from the allegations in the complaint, which the Court

"accept[s] as true" on a motion to dismiss.  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183,

188 (2d Cir. 2020) (citation omitted).[1]

---

[1] The plaintiffs' claims have been consolidated; the operative pleading in this action is the Amended
  Complaint.  (*See* ECF No. 20.)

The defendant Lindt manufactures, markets, and sells the "Lindt Excellence Dark Chocolate 70% Cocoa bar" and the "Lindt Excellence Dark Chocolate 85% Cocoa bar." (ECF No. 20 ¶¶ 56–57.)

 

 

(*Id.* ¶ 11.) The packaging and marketing for the chocolate bars include the following representations:

- The bars are "[e]xpertly crafted with the finest ingredients;"

- "[T]op quality is particularly important in the meticulous selection of [Lindt's] raw materials;"

- "[P]remium chocolate products are safe, as well as delightful;"

- "[Lindt's] standards uphold the integrity of [its] raw and packaging materials and ingredients, as well as warehousing, transportation, and manufacturing processes. They help [Lindt] manage key quality and food safety risks across [its] value chain, from farmer to final consumer, while staying ahead of regulatory requirements;"

- "International Operations team oversees product quality and product safety, while quality assurance teams at each of [its] subsidiaries provide oversight at their local production facilities;" and

- "[Lindt] monitor[s] the quality of [its] ingredients not only in [its] factories but also on different steps in [its] supply chain, starting in the countries of origin."

(ECF No. 20 ¶¶ 12–16, 18.)

In December 2022, a Consumer Reports article revealed that certain dark chocolate bars, including Lindt's 70% and 85% bars, had exceedingly high levels of lead and cadmium, such that "eating just an ounce a day would put an adult over a level that public health authorities and Consumer Reports' experts say may be harmful." (ECF No. 20 ¶ 6 (cleaned up) (quoting Kevin Loria, Lead and Cadmium Could be in Your Dark Chocolate, Consumer Reports, (December 15, 2022), https://www.consumerreports. org/health/food-safety/lead-and-cadmiumin-dark-chocolate-a8480295550/).) According to the report, one ounce of the three and a half ounce Lindt 85% Cocoa Dark Chocolate Bar contained lead at 166% above the California Maximum Allowable Dose Levels ("MADL"). (*Id.* ¶ 64.) One ounce of the three and a half ounce Lindt 70% Cocoa Excellence Dark Chocolate Bar contained cadmium at 116% above the California MADL. (*Id.*; *see also id.* n.20.)

The plaintiffs brought this class action lawsuit in February 2023. They allege that they paid a price premium for the defendant's 70% and 85 % Cocoa bars because they believed that

they were "purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals."  (*Id.* ¶¶ 32, 34, 36, 38, 40, 42, 44, 54; *see id.* ¶¶ 48, 50, 53.)  The plaintiffs explain that consumers "choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and for its relatively low levels of sugar."  (*Id.* ¶ 62.)

The plaintiffs contend that they would not have bought the chocolate bars or would have paid less for them if Lindt had "disclosed on the label that the Products contained (or risk containing) unsafe toxic Heavy Metals."  (*Id.* ¶¶ 32, 34, 36, 38, 40, 42, 44.)  The defendant not only "fail[ed] to disclose on its packaging that the Products contain (or have a material risk of containing) Heavy Metals" but made affirmative claims on its website, in stores and in other marketing materials that its "premium chocolate products are safe, as well as delightful."  (*Id.* ¶¶ 11, 15; *see also id.* ¶ 19 (collecting the defendant's safety advertisements).)  The plaintiffs further allege that heavy metals "in foods pose a significant safety risk to consumers because they can cause cancer and often irreversible damage to brain development as well as other serious health problems."  (*Id.* ¶ 7.)

The plaintiffs also allege that Lindt knew that its bars contained contaminants.  "Starting in 2014, Defendant's products were tested by a non-profit consumer advocacy organization, which informed Defendant that its dark chocolate products contained levels of cadmium and lead, a subject of concern for the group and for consumers at large."  (*Id.* ¶ 80.)  In addition, Lindt agreed to a consent judgment in 2018 based on similar accusations.  (*See id.* ¶ 141 (citing *As You Sow v. Trader Joe's Company, Inc.*, No. CGC-15-548791 (Cal. Sup. Ct. Feb. 15, 2018)).)

Because the plaintiffs come from different states, they allege a national class as well as Alabama, California, Florida, Illinois, Nevada and New York subclasses. They allege violations of state laws, including:

- California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which prohibits any "unlawful, unfair or fraudulent business act or practice" (*id.* ¶¶ 155–170 (Count 1));

- California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, which forbids statements or omissions in connection with the sale of goods "which is untrue or misleading" (*id.* ¶¶ 171–180 (Count 2));

- California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (*id.* ¶¶ 181–193 (Count 3));

- Breach of implied warranty of merchantability under California and Nevada law (*id.* ¶¶ 194–207 (Count 4));

- Unjust enrichment under New York law (*id.* ¶¶ 208–216 (Count 5));

- Illinois's Consumer Fraud Act, 815 ILCS 505/1, *et seq.* (*id.* ¶¶ 217–230 (Count 6));

- New York's General Business Law ("GBL") §§ 349 and 350 (*id.* ¶¶ 231–252 (Counts 7 and 8));

- Alabama's Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.* (*id.* ¶¶ 253–259 (Count 9));

- Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann §§ 501.201 *et seq.* (*id.* ¶¶ 260–273 (Count 10)); and

- Nevada Deceptive Trade Practices Act, NRS § 41.600 and NRS §§ 598.0903 *et seq.* (*id.* ¶¶ 274–288 (Count 11)).

On November 20, 2023, the defendant moved to dismiss the action, arguing that the plaintiffs do not allege (1) a duty to disclose; (2) that they were deceived, or that a reasonable consumer would be deceived; (3) a claim for breach of implied warranty; and (4) standing to pursue their claims. (ECF No. 34.) The plaintiffs oppose. (ECF No. 35.)

**DISCUSSION**

I.     **Rule 12(b)(1)**

    a.     **Legal Standard**

Under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiffs have not established standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, [the plaintiffs] have the burden of alleging facts that affirmatively and plausibly suggest that they have standing to sue." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018) (cleaned up) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). Plaintiffs have standing if they have pleaded a case or controversy in which they have a personal stake in the outcome. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). For a plaintiff to have standing to bring a lawsuit under Article III of the United States Constitution, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). A concrete injury must be "'de facto'; that is, it must actually exist." *Id.* at 340.

    b.     **Standing**

The defendant argues that the plaintiffs "fail to plead a plausible injury" sufficient to confer standing because their "claimed injury-in-fact is economic only" since the plaintiffs "allege that 'the Products [they] received were worth less than the Products for which [they] paid.'" (ECF No. 34-1 at 30 (quoting ECF No. 20 ¶¶ 48, 53).) According to the defendant, "a

plaintiff must do more than allege that she did not receive a benefit she thought she was obtaining;" rather, "she must show that she did not receive a benefit for which she actually bargained."  (*Id.* at 31 (cleaned up) (citing *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020).)[2]  The defendant argues that the "benefit-of-bargain harm cannot be based on Plaintiff's subjective allegation that the trace amounts of lead at issue are unacceptable to her." (*Id.* (internal quotations omitted) (citing *Koronthaly v. L'Oreal USA, Inc*., 374 F. App'x 257, 259 (3d Cir. 2010)).)

This argument is unpersuasive.  The Second Circuit has explained that "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium' — that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."  *Eidelman v. Sun Prods. Corp.*, No. 21-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022); *see also Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703–04 (2d Cir. 2020) ("Axon [] suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury — paying a premium — as a result.").  The plaintiffs' allegations fit this theory.  The plaintiffs allege that if they knew the truth about the content of lead and cadmium in Lindt's dark chocolate bars, they would have paid less for them or not purchased them at all.  (*See* ECF No. 20 ¶¶ 32, 34, 36, 38, 40, 42, 44, 48, 50, 53, 54.)  The plaintiffs also allege that Lindt markets the chocolate bars "as using the

---

[2] The defendant's citations to *McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020), and *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018), are unavailing.  In *Johnson & Johnson*, the plaintiff did not plead a price-premium theory.  *See* 903 F.3d at 289.  And the defendant in *McGee* disclosed the harm about which the plaintiff was complaining.  *See* 982 F.3d at 708.  Moreover, the *McGee* court "noted that overpayment is a viable theory of economic injury where 'a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product.'" *Henning v. Luxury Brand Partners, LLC*, No. 22-CV-07011, 2023 WL 3555998, at *3 (N.D. Cal. May 11, 2023) (citing *McGee*, 982 F.3d at 706).

'finest ingredients,'" including "carefully selected and traceable cocoa beans," with "top quality" — statements that the plaintiffs allege were "made to induce reasonable consumers, such as Plaintiffs, to purchase the Products and/or to purchase the Products at premium prices." (*Id.* ¶ 124.) These allegations permit the inference "that the [Products] sell[] for a higher price than a comparable product because of [their] use of the deceptive claim." *Eidelman,* 2022 WL 1929250, at *1; *see also Levy v. Hu Prods. LLC,* No. 23-CV-1381, 2024 WL 897495, at *4 (S.D.N.Y. Mar. 1, 2024) (same). Accordingly, the plaintiffs have sufficiently alleged an injury-in-fact based on their payment of a premium price for Lindt's dark chocolate bars.[3]

## II.    Rule 12(b)(6)

### a.    Legal Standard

A court deciding a motion to dismiss accepts as true the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

---

[3] The defendant also contends that the plaintiffs have not "suffered any physical injury from consuming the Products" because they have not established that the amount of lead in the Products was "not 'safe.'" (ECF No. 34-1 at 31–32.) The defendant says that the plaintiffs cannot rely on California's MADL regulations to establish that the alleged level of lead was "not 'safe'" because the regulations have been superseded by a 2018 consent judgment, which set a higher threshold. (*Id.* at 32.) "[W]hat constitutes an unsafe level of lead is a question of fact not appropriately resolved on a motion to dismiss." *Hu*, 2024 WL 897495, at *4 (cleaned up) (citing *Rodriguez v. Mondelēz Glob. LLC*, No. 23-CV-00057, 2023 WL 8115773, at *5 (S.D. Cal. Nov. 22, 2023)).

### b.    New York Law Deception Claim

Lindt argues that the plaintiffs do not plausibly allege under GBL §§ 349 and 350 a misrepresentation that would be likely to mislead a reasonable consumer.  (ECF No. 34-1 at 25–29.)[4]

New York law prohibits any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" and "false advertising" that is "misleading in a material respect."  N.Y. Gen. Bus. Law §§ 349(a), 350, 350-a(1).  "To assert a claim under either section, a plaintiff must establish that [1] the defendant engaged in consumer[-]oriented conduct, [2] that is materially misleading, and [3] plaintiff was injured as a result of the deceptive act or practice."  *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (quoting *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017)).  "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

---

[4] Lindt does not specify in this section of its motion — or in other sections of the motion discussing other theories of liability, *see infra* — which state's laws it is discussing or which counts of the complaint it is addressing.  Lindt begins this section of its brief with a citation to a case addressing GBL §§ 349 and 350, and for the most part, cites cases addressing New York law.  (ECF No. 34-1 at 25–29.)  The Court therefore assumes that Lindt is arguing that the plaintiffs' New York law deception claim should be dismissed.  Lindt uses string citations to cases addressing other states' laws without explaining whether it means to argue that the plaintiffs' complaint fails to state deception claims under those states' laws as well, or whether Lindt cites these cases merely for comparison and additional support for its argument to dismiss the New York law deception claim.  (*See* ECF No. 34-1 at 25–29 (appending to string citations cases addressing Illinois law, Alabama law, Nevada law, California law, Minnesota law, and Colorado law).  To the extent the defendant intends to move to dismiss deception claims under any state law other than New York law, it has waived those arguments.  *See Lyn v. Inc. Vill. of Hempstead*, No. 03-CV-5041, 2007 WL 1876502, at *16 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ."), *aff'd*, 308 F. App'x 461 (2d Cir. 2009).

The plaintiffs assert that Lindt misrepresented that the dark chocolate bars "were made with the 'finest ingredients,'" and that Lindt "omitted material information as to the Products' true quality and value." (EFC No. 20 ¶ 27.) As a result, "[r]easonable consumers, including Plaintiffs, paid more for the Products than they would have had they known the truth." (*Id.*) The plaintiff cites the following statements in Lindt's packaging and marketing:

- The chocolate bars are "[e]xpertly crafted with the finest ingredients;"

- "[T]op quality is particularly important in the meticulous selection of our raw materials;"

- "[P]remium chocolate products are safe, as well as delightful."

- "Our standards uphold the integrity of our raw and packaging materials and ingredients, as well as warehousing, transportation, and manufacturing processes. They help us manage key quality and food safety risks across our value chain, from farmer to final consumer, while staying ahead of regulatory requirements."

- "International Operations team oversees product quality and product safety, while quality assurance teams at each of [its] subsidiaries provide oversight at their local production facilities."

- "We monitor the quality of our ingredients not only in our factories but also on different steps in our supply chain, starting in the countries of origin."

(ECF No. 20 ¶¶ 12–16, 18.)[5]

"Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Troncoso v. TGI Friday's Inc.*, No. 19-CV-2735, 2020 WL 3051020, at *6 (citation omitted). Taking the packaging as a whole, these allegations are sufficient to allege that a reasonable consumer could be misled into purchasing or overpaying for

---

[5] In *Hu*, the Southern District considered only a subset of the alleged misleading statements because "[m]any of the[] statements . . . appear[ed] only on Hu's website, which [the plaintiff did] not allege that she viewed or relied upon when purchasing the Products." 2024 WL 897495, at *6. Here, in contrast, the plaintiffs allege that the misleading statements appeared on Lindt's "packaging," "websites," "stores and marketing materials, such as in videos from Lindt's YouTube Channel." (ECF No. 20 ¶¶ 12, 14, 19.)

Lindt's dark chocolate because the consumer believed that the bars did not contain unsafe amounts of lead, or any lead at all.  In a price-premium case, the plaintiffs must simply plead that they "overpaid for the product" — that is, they "paid a premium for a product based on the defendant['s] inaccurate representations." *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *10 (S.D.N.Y. Nov. 9, 2020) (cleaned up); *see also Hu*, 2024 WL 897495, at *6 (finding that the plaintiff stated a plausible misrepresentation claim where the plaintiff alleged "that at least three elements of Hu's packaging are misleading: (1) the name of the 'Simple' 70% dark chocolate bar; (2) the ingredient list, which does not contain lead; and (3) 'the long list of undesired items that the Product boastfully does not contain,' including refined sugar, dairy, and soy"); *Rodriguez*, 2023 WL 8115773, at *11 (finding allegations that dark chocolate bar label claims about the quality of the ingredients, like "made only with 'the finest' cacao beans and other premium, fine ingredients," deceptively conveyed to reasonable consumers that they do not contain unsafe levels of toxic heavy metals).

Lindt's arguments to the contrary are unpersuasive.  First, Lindt argues that "[b]ecause lead and cadmium are unavoidable in the food supply, plaintiffs cannot plausibly allege that the trace amounts reported in the Products (at levels substantially below the thresholds set by regulators) are material" omissions.  (ECF No. 34-1 at 25.)  However, the plaintiffs allege "that the lead content of dark chocolate 'is important to consumers and likely to affect their choice of product,'" which "render[s] the omission 'material.'"  *Hu*, 2016 WL 5374134, at *6 (citing *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016); *see also Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (ruling that the allegedly "widely known" risk of "overconsuming sugar" did not render misrepresentation claims implausible).  (ECF No. 20 ¶¶ 32, 34, 36, 38, 40, 42, 44, 62 (consumers

"choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and for its relatively low levels of sugar" and if Lindt had "disclosed on the label that the Products contained (or risk containing) unsafe toxic Heavy Metals" the plaintiffs would not have purchased the chocolate bars or they would have paid less for them).)

Next, Lindt argues that the phrase "[e]xpertly crafted with the finest ingredients" and the word "excellence" are inactionable "puffery." (ECF No. 34-1 at 28.) Only "[g]eneralized, vague, and unspecified assertions," that is, only "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" constitute puffery. *Rodriguez*, 2023 WL 8115773, at *11 (internal quotations omitted). Considering the packaging as a whole, these statements are not simply puffery because a reasonable customer could interpret Lindt's statements as representations about the quality of the chocolate's ingredients, and, more specifically, an absence of lead. *See Dopico v. IMS Trading Corp.*, No. 14-CV-1874, 2018 WL 4489677, at *4–5 (D.N.J. Sept. 18, 2018) (concluding statement on dog treats label that they were made with "only the finest ingredients" not inactionable puffery in express warranty breach claim); *Hu*, 2024 WL 897495, at *7 (S.D.N.Y. Mar. 1, 2024) (finding the word "simple" used to describe chocolate bar ingredients not inactionable puffery); *Rodriguez*, 2023 WL 8115773, at *12 (collecting cases finding similar label claims concerning "safety and quality assurances" on food products not inactionable puffery).

### c.    New York Law Omission Claim

New York applies the "exclusive or superior knowledge test" to omission claims under the GBL. A "plaintiff bringing an omission-based claim for [GBL] § 349 liability" must plausibly plead that "'the business alone possesses material information that is relevant to the consumer and failed to provide this information,' or that plaintiffs could not 'reasonably have

obtained the relevant information they now claim the defendant failed to provide.'" *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-CV-962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, N.A., 647 N.E.2d 741, 745 (N.Y. 1995)).

Lindt argues that the plaintiffs have not plausibly alleged "that Lindt had exclusive knowledge of the presence or potential presence of heavy metals in dark chocolate, and the fact that the Products may contain heavy metals was readily obtainable by plaintiffs." (ECF No. 34-1 at 19.)[6] Lindt relies heavily on *Paradowski*, in which the Second Circuit, affirming the district court's grant of summary judgment, observed that "the public has been aware of the occurrence (or the risk)" of dog foods containing heavy metals "for some time." 2023 WL 3829559, at *3. "In that case, however, the Circuit had the benefit of a developed 'factual record establish[ing] that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals.'" *Hu*, 2024 WL 897495, at *6 (S.D.N.Y. Mar. 1, 2024) (rejecting a similar argument and finding that a plaintiff had plausibly pled an omission claim under New York law).

The Court's analysis is limited to the four corners of the complaint, which establishes that the plaintiffs have plausibly alleged that a consumer could not reasonably have obtained

---

[6] Lindt asserts that "the very documents to which plaintiffs cite, including publications by FDA, provide consumers with all of the information that they need to understand and fully appreciate the potential for heavy metals in the food supply generally and the Products specifically, including that heavy metals were present in at least some Products in nonzero amounts." (ECF No. 34-1 at 19.) However, many of these documents post-date the 2018 start of the Class Period and only the Consumer Reports article appears to have been written for ordinary news consumers. (*See, e.g.*, ECF No. 20 ¶ 32 (alleging that the plaintiff Luke Gralia "purchased Lindt Excellence 85% Cocoa Dark Chocolate Bar at a Rite Aid in Queens, New York numerous times during the Class Period, from February 15, 2018 through the present").) That article also postdates many of the plaintiff's claims because the report was published in December 2022. As for the claims that arose after publication of the Consumer Reports article, the plaintiffs have nonetheless plausibly alleged that a consumer could not reasonably have been expected to obtain the relevant information regarding lead and cadmium content in Lindt's dark chocolate bars. *See Paradowski*, 2023 WL 3829559, at *2 (quoting *Oswego*, 647 N.E.2d at 745).

information regarding the amount of lead in Lindt's dark chocolate bars.  The complaint states

that "[c]onsumers lack the scientific knowledge necessary to determine whether Defendant's

Products do in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and

quality of the Products."  (ECF No. 20 ¶ 9.)  *See Hu*, 2024 WL 897495, at *6 ("[T]he Court finds

that Levy has alleged that a consumer could not reasonably determine how much lead the

Products contained, as 'detecting these chemicals requires expensive scientific testing.'")

Moreover, the Second Circuit acknowledged in *Paradowski* that "[i]f Plaintiff had claimed that

Champion's pet foods contained quantities of heavy metals in excess of safe thresholds, then that

could be information that 'the business alone' possessed."  2023 WL 3829559, at *3.  While the

plaintiffs in this case claim that "[n]o amount of lead is known to be safe," they cite data

showing that the defendant's chocolate contained lead and cadmium in excess of MADL.  (ECF

No. 20 ¶¶ 64, 100.)  Dismissal is therefore premature, as "[t]he amount of lead that is 'safe' to

consume will be . . . a hotly contested issue of fact."  *Hu*, 2024 WL 897495, at *6 (cleaned up).

### d.    California Law Omission Claim

To allege a fraudulent omission under California law, "the omission must either (1) 'be

contrary to a representation actually made by the defendant,' or (2) 'an omission of a fact the

defendant was obliged to disclose.'"  *Rodriguez*, 2023 WL 8115773, at *10 (quoting *Hodsdon v.

Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018)).[7]

The first question is whether Lindt had a duty to disclose the presence of lead and

cadmium in its dark chocolate bars.  A defendant has a duty to disclose when either (1) "the

defect at issue relates to an unreasonable safety hazard," (2) "the defect is material, 'central to

---

[7] "Consumer protection claims under the [California Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law] are often analyzed together because they share similar attributes." *See Rodriguez*, 2023 WL 8115773, at *9 (citing *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020)).

the product's function,'" or (3) "the plaintiff alleges one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1101–02 (explaining that "plaintiffs can establish a duty to disclose if the product defect presents a safety issue, if the defect goes to the central function of the product, or if plaintiffs satisfy one of the *LiMandri* factors" (cleaned up)).  "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Rodriguez*, 2023 WL 8115773, at *10 (quoting *Hammerling*, 615 F. Supp. 3d at 1085).  "Thus, [the plaintiffs] must allege that [Lindt's] failure to disclose the presence of lead and cadmium in its Products either (1) relates to an unreasonable safety hazard or (2) is material, 'central to the product's function,' and meets one of the four *LiMandri* factors."  *Id.* (citing *Hodsdon*, 891 F.3d at 863).

The plaintiffs easily satisfy the standard, as they have plausibly alleged a safety issue, a defect that goes to the central function of the products, and at least one of the *LiMandri* factors.

> i.    *Unreasonable safety hazard*

The plaintiffs assert that Lindt's failure to disclose the presence of lead and cadmium in its products created an unreasonable safety hazard.  (*See* ECF No. 35 at 17 ("Defendant's omissions were unreasonably dangerous and material . . . .").)

An "alleged unreasonable safety hazard must describe more than merely conjectural and hypothetical injuries."  *Grausz v. Hershey Co.*, No. 23-CV-00028, 2024 WL 312688, at *4 (S.D. Cal. Jan. 25, 2024) (cleaned up).  "Where a plaintiff alleges a sufficiently close nexus between

the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Id*. (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017)).

To determine whether a plaintiff has alleged a sufficient nexus to establish an unreasonable safety hazard, courts engage in a careful line-drawing exercise. In *Mui Ho v. Toyota Motor Corp.*, where the plaintiffs alleged that the defendant's vehicle's headlamp was dangerously defective, the court acknowledged that simply invoking the word "safety" was insufficient to establish a duty to disclose, but found that the plaintiffs' allegations that the vehicle's headlamp flickered or went out at night or in bad weather were sufficient to plead an unreasonable safety risk because the alleged defect put the car's driver in danger. 931 F. Supp. 2d 987, 997–98 (N.D. Cal. 2013). The court distinguished *Smith v. Ford Motor Company*, 462 Fed. App'x. 660 (9th Cir. 2011), where the Ninth Circuit found that the plaintiffs did not adequately plead an unreasonable safety hazard because they "did not adequately show how problems with a car's ignition lock (i.e., a driver's inability to start or shut off the car's engine) posed an unreasonable safety hazard." *Mui Ho*, 931 F. Supp. 2d at 997 (citing *Ford Motor*, 462 Fed. App'x. 660, 663 (9th Cir. 2011); *see Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1259–60 (2018) (comparing *Mui Ho* and *Ford Motor* to evaluate an unreasonable safety hazard claim).

The plaintiffs in this case allege a sufficient nexus. The plaintiffs detail the risks of lead and cadmium, which "bioaccumulate in the body" so that people "cannot excrete the toxins as quickly as they are absorbed;" the toxins therefore "remain in one's body for years." (*See* ECF No. 20 ¶¶ 90, 99.) "Consistent, long-term exposure to even small amounts of [lead and cadmium] can lead to a variety of health problems," and the risks are most pronounced for "[c]hildren younger than 6 years" and "pregnant women." (*Id.* ¶¶ 2, 89.) According to the

complaint, the harmful effects may include developmental issues, hypertension, immune suppression, liver and kidney damage, cardiovascular disease, gastrointestinal problems, fragile bones, reproductive issues, lead poisoning, and cancer ("[l]ead is a carcinogen" and cadium is "considered a cancer-causing agent"). (*Id.* ¶¶ 3, 89, 93, 94–96, 101–104.)  Moreover, lead and cadmium "display[] a troubling ability to cause harm at low levels of exposure," as "[e]ven very low exposure levels to lead can cause lower academic achievement, attention deficits, and behavior problems," and "[e]xposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss." (*Id.* ¶¶ 94, 98, 104 (citations omitted).)  The plaintiffs also allege that they have purchased the dark chocolate bars regularly since 2018; some plaintiffs allege that their minor children have eaten the bars. (*Id.* ¶¶ 32, 49.) Under these circumstances, the complaint is more like the complaint in *Mui Ho* than *Ford Motor*. Thus, the plaintiffs have sufficiently alleged an unreasonable safety hazard.

The defendant maintains that the plaintiffs have not sufficiently alleged an unreasonable safety hazard because they "have not alleged, nor could they, that they or anyone else have been injured as a result of consuming the Products (or any dark chocolate product)." (ECF No. 34-1 at 21.)  But the plaintiffs need not wait until someone develops lead poisoning or cancer to allege a sufficient nexus between the defect — lead and cadmium exposure — and the identified harms. *See Apodaca v. Whirlpool Corp.*, No. 13-CV-00725, 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013) ("Given the tight causal relationship alleged in the FAC, the Court does not find Plaintiff Apodaca must wait until his dishwasher actually catches fire to allege sufficiently the nexus between the defect and the safety hazard.  While catching fire would be the extreme result of this causal chain, the FAC sufficiently alleges its possibility as a logical outcome.").[8]

---

[8] The defendant's reliance on *Grausz v. Hershey Co.*, No. 23-CV-00028, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) is misplaced.  In that case, the plaintiff alleged "that the Center for Disease Control Agency

ii.    *Material defect*

Even if the plaintiff had not plausibly alleged that the defect relates to an unreasonable safety hazard, the plaintiff may still state a claim for omission under California law where "the defect is material." *Rodriguez*, 2023 WL 8115773, at *10.  A defect is material where a "reasonable consumer would deem it important in determining how to act in the transaction at issue." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018).  As explained above in connection with the New York law deception claim, the plaintiffs allege "that the lead content of dark chocolate 'is important to consumers and likely to affect their choice of product,'" which "render[s] the omission 'material.'"  *Hu*, 2016 WL 5374134, at *5 (citing *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016).  (*See* ECF No. 20 ¶¶ 34, 36, 38, 40, 42, 44, 62 (consumers "choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and for its relatively low levels of sugar" and if Lindt had "disclosed on the label that the Products contained (or risk containing) unsafe toxic Heavy Metals" the plaintiffs would not have purchased the chocolate bars or they would have paid less for them).  Accordingly, the plaintiffs have also sufficiently alleged a California law claim based on materiality.

---

for Toxic Substances and Disease Registry . . . has determined that cadmium may only be ingested without risk of adverse health effects to the kidneys if the amount consumed is less than 0.0002 mg . . . per day." *Id.* at *5 (cleaned up).  The court found that this allegation was insufficient to plead an unreasonable safety hazard because the plaintiff "fail[ed] to provide a pin cite to this claim, and the report by the U.S. Department of Health and Human Services to which Plaintiff cites is nearly 500 pages." *Id.* (cleaned up).  Observing that "judges are not like pigs, hunting for truffles buried in briefs," the court declined to "scour the record" to find support for the plaintiff's claims and granted the defendant dismissal of the California omission claim. *Id.* (cleaned up).  The Court also granted the plaintiff leave to amend.  Because of these unique circumstances, the *Grausz* court's analysis cannot fairly be read to support Lindt's position on this point.

### iii.    The LiMandri factors

A plaintiff may also state a claim for omission under California law if he or she alleges one of the *LiMandri* factors: that "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Rodriguez*, 2023 WL 8115773, at *10.

The plaintiff asserts that all *LiMandri* factors except fiduciary relationship apply.

<u>Exclusive knowledge.</u>  Under California law, "[e]xclusive knowledge can be established when [the defendant] knew of a defect while the plaintiffs did not and 'given the nature of the defect, it was difficult to discover.'"  *In re Fontem US, Inc. Consumer Class Action Litig.*, No. 15-CV-01026, 2016 WL 11503066, at *11 (C.D. Cal. Apr. 22, 2016) (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014)).  "Exclusivity is not applied with rigidity."  *In re MyFord*, 46 F. Supp. 3d at 960 (cleaned up) (quoting *Czuchaj v. Conair Corp.*, No. 13-CV-1901, 2014 WL 1664235, at *4 (S. D. Cal. Apr. 17, 2014).  Even if some information is accessible online, a defendant may still be considered to have exclusive knowledge because the plaintiff "should not be expected to have read and reviewed those obscure publications."  *In re Fontem*, 2016 WL 11503066, at *11; *see also In re MyFord*, 46 F. Supp. 3d 936 at 960 ("even the presence of information online does not automatically defeat exclusive knowledge").

For many of the reasons that the plaintiff's claims are sufficient under New York law, the plaintiffs have plausibly alleged exclusive knowledge under California law.  The presence of lead and cadmium in Lindt's dark chocolate bars "was difficult to discover," as "[c]onsumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact

contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the Products." (ECF No. 20 ¶ 9; ECF No. 35 at 16.) The existence of the publicly available Consumer Reports article does not undermine this conclusion. *See In re MyFord*, 46 F. Supp. 3d at 960 ("Here, Ford primarily argues against exclusive knowledge on the ground that there was public knowledge about problems with the MFT system. While the complaint does contain allegations regarding publicly available knowledge, that is far from being dispositive. Even if the public—and therefore Plaintiffs—were aware of some problems with MFT, that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems, including the fact that the problems could not be fixed (as alleged by Plaintiffs)." (internal citations omitted)). Accordingly, the plaintiffs have also plausibly alleged an exclusive knowledge claim.

Active concealment. To state an active concealment claim, the plaintiff must plead that Lindt intentionally concealed vital information through deceptive actions or misleading statements. *See Edwards v. FCA US LLC*, 2022 U.S. Dist. LEXIS 98891, at *11 (N.D. Cal. June 2, 2022) ("A duty to disclose can also arise when the defendant actively conceals material facts." (internal citations omitted)).

Lindt argues in passing that the plaintiffs have not stated a claim for active concealment; it asserts that the plaintiffs "do not (and cannot) plausibly allege that Lindt actively concealed material facts by not including a disclosure about the potential presence of heavy metals on their product label" because "'[m]ere nondisclosure does not constitute active concealment,' and 'generalized allegations with respect to active concealment will not do.'" (ECF No. 34-1 at 23 (quoting *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 576–77 & n.5 (N.D. Cal. 2019)).[9] However,

---

[9] Again, Lindt does not clarify whether it is arguing about the claim under California law or another state's law. In a string citation in its brief analysis, Lindt cites one California law case, one New York

as discussed above, the plaintiffs are not alleging "mere nondisclosure" or making "generalized allegations" of misleading statements.  Rather, the plaintiffs say that Lindt's statements — that its "premium chocolate products are safe, as well as delightful," that they contain the "finest ingredients" — and Lindt's assurances about "product quality and product safety," actively concealed from consumers material facts about the chocolates' lead and cadmium content.  (ECF No. 20 ¶¶ 12–16, 18.)  This is sufficient to state a claim for active concealment.  *See Edwards*, 2022 U.S. Dist. LEXIS 98891, at *11.

Partial representation.  Finally, a plaintiff may allege that "the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1079 (N.D. Cal. 2014) (citation omitted).

Lindt argues the plaintiffs make "zero allegations . . . about the presence of lead or cadmium in the products," and that Lindt made no partial representations on which the plaintiffs could have relied.  (ECF No. 34-1 at 24.)[10]  But, as already discussed, Lindt made claims regarding the "excellence" of the chocolate bars and represented they are "expertly crafted" and made with only the "finest ingredients."  (ECF No. 20 ¶¶ 12–16, 18.)  Lindt also represented that the bars are "safe."  (*Id.*)  These partial misrepresentations could cause a reasonable consumer to believe that the bars did not contain unsafe levels of toxic ingredients like lead and cadmium. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 683 (N.D. Cal. 2021) ("[A] statement like

---

law case, one Kentucky law case, and one Alabama law case.  (ECF No. 34-1 at 23–24.)  In its reply, Lindt analyzes primarily California case law.  (ECF No. 36 at 8–9).  Accordingly, the Court will analyze this argument under California law.  To the extent Lindt intended to argue for dismissal under any other state's law, it has waived those arguments.  *See Lyn*, 2007 WL 1876502, at *16.

[10] Lindt has also waived arguments about partial representation under any state law besides Illinois and California, because in its main brief, Lindt cites Kentucky case law, which is not relevant to this lawsuit, and otherwise cites only Illinois case law.  (ECF No. 34-1 at 24–25).  *See Lyn*, 2007 WL 1876502, at *16.  In its reply, Lindt adds some discussion of California case law.  (ECF No. 36 at 9–11.)

'uncompromising nutrition' might simply be understood to mean that the Wellness Products were highly nutritious compared to other possible dog food formulations.  But, viewed in the light most favorable to [plaintiff], it might also be reasonably understood to mean that non-nutritious substances will not exist in the dog food—that is, it is 'uncompromising.'  Similarly, 'unrivaled quality standards' might be understood as a marketing platitude, or it might be understood to communicate that steps are taken to ensure quality control in ingredients that could, among other things, include elimination of heavy metals or synthetic chemicals.")  Accordingly, the plaintiffs may also proceed on a partial representation theory.[11]

### e.    California and Nevada Law Breach of Implied Warranty Claim

The plaintiffs also bring claims for breach of implied warranty under California and Nevada law.  (ECF No. 20 ¶ 196.)  To bring this claim, the plaintiffs must plausibly plead "that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption or that the product was contaminated or contained foreign objects."  *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) (citation omitted) (applying California law); *see Underwood v. O'Reilly Auto Parts, Inc.*, 699 F. Supp. 3d 1049, 1062 (D. Nev. 2023) (applying Nevada law) ("[T]he implied warranty of merchantability embraces a minimum level of safety.")  The plaintiffs assert that Lindt's chocolate bars "were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals" unsafe for consumption, which is clearly enough at this stage of the litigation.  (*See* ECF No. 20 ¶¶ 64, 89–92, 201.)

---

[11] For the same reasons, the plaintiffs have sufficiently stated a claim under Illinois law.  Lindt argues that the plaintiff has not alleged "direct statements that contain material omissions" rather than mere "opportunities or locations where [defendant] could have disclosed the alleged defect."  *Guajardo v. Skechers USA, Inc.*, No. 19-CV-04104, 2021 WL 4302532, at *3-5 (C.D. Ill. Sept. 21, 2021) (quotation marks omitted).  As discussed above, the plaintiffs have identified statements Lindt made regarding the quality and safety of their chocolate bars, which suffices.  (*See* ECF No. 20 ¶¶ 12–16, 18, 222–30.)

## CONCLUSION

For these reasons, the defendant's motion to dismiss is denied.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated:  Brooklyn, New York
        September 6, 2024